IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHNATHAN CARSTARPHEN            )
**# 06737-003**                  )
    Petitioner               )
                                 )
vs.                              )     Civil Action No. 07-0417-KD
                                 )     Criminal Action No. 06-137-KD-C
UNITED STATES OF AMERICA         )
                                 )
                                 )
    Defendant.               )
                                 )

**ORDER**

This matter is before the court on petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. 2255 and memorandum in support (docs. 131, 132) and the government's response in opposition (doc. 143).

I.    PROCEDURAL and FACTUAL BACKGROUND

Petitioner, Johnathan Carstarphen, was indicted on June 29, 2006, on one count of conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count One). Subsequently, Carstarphen signed a written plea agreement and factual resume admitting to the offense and pled guilty to Count One. As part of the plea agreement, Carstarphen waived his right to appeal or to collaterally attack his sentence, except to the extent it included an upward departure from the sentencing guideline range, was in excess of

the statutory maximum, or was a claim of ineffective assistance of counsel.[1]

At the plea hearing Carstarphen, acknowledged, under oath, that he had received the indictment, reviewed it with his attorney, understood the charges against him and was fully satisfied with his attorney's representation. Carstarphen had an opportunity to read and discuss his plea agreement with his attorney before he signed it and stated that he understood all the terms of his plea agreement. Carstarphen admitted that he committed the acts set forth in his

---

[1] The agreement contains the following paragraphs regarding the waiver of his rights to appeal or collaterally attack his sentence:

LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

17. The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

18. With the limited exceptions noted below, the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

19. The defendant reserves the right to contest in any appeal or postconviction proceeding any of the following:
a. Any punishment imposed in excess of the statutory maximum;
b. Any punishment that constitutes an upward departure from the guidelines range; or
c. A claim of ineffective assistance of counsel.

20. In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.  (Doc. 96 at 9-10)

factual resume and acknowledged that he was pleading guilty of his own free will because he was guilty.  Further, this court questioned Carstarphen about his appellate waiver and the following colloquy ensued:

> THE COURT: Now, in some circumstances you would have a right to appeal your – whatever sentence I impose. But under your plea agreement, you are basically giving up your right to appeal your sentence. Do both of you understand that?
>
> MR. CARSTARPHEN: Yes, ma'am.

(Doc. 141 at 8.)

Based on the full plea colloquy, as well as the signed plea agreement, the court concluded that Carstarphen was fully competent and capable of entering an informed plea, and that Carstarphen was aware of the nature of the charges against him and the consequences of his plea. The court further determined that Carstarphen's guilty plea was knowing and voluntary, and was supported by an independent basis in fact containing each of the essential elements of the offense. The guilty plea was accepted and Carstarphen was adjudged guilty of the offense.

On December 8, 2006, Carstarphen was sentenced.  The base offense under the sentencing guidelines was determined to be a level 27.  The criminal history level was determined to be V, which resulted in an advisory guideline range of 120 to 150 months imprisonment.   As a result of Carstarphen's substantial assistance, the United States filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1.  Based on his level of cooperation with the United States, Carstarphen was given a fifty percent reduction off the low

end guideline sentence[2] and was sentenced to 60 months imprisonment to run consecutively to the custody sentence imposed in a previous federal case in which his supervised release was revoked.[3]  In addition, the court imposed an eight year supervised release term.  No objections to the sentence were made by petitioner or the government.  On May 10, 2007, Carstarphen filed a motion for reconsideration which was denied.

Carstarphen did not file an appeal.  Instead, Carstarphen filed the current motion to vacate his sentence under 28 U.S.C. § 2255 on the grounds, in sum, that his counsel was ineffective based on the following:  (1) failing to file a requested appeal; (2)  failing to discover an immunity agreement existing before he pled guilty; (3)  advising him that he would receive concurrent sentences, and (4) failing to move for a dismissal of the indictment.  As further grounds for the motion, Carstarphen contends that the prosecutor committed misconduct by indicting him on charges that were covered by an immunity agreement and by "requiring" him to plead guilty to an offense involving drugs already covered by an immunity agreement.

In response to the motion, the government argues that petitioner's claims are due to be dismissed on the grounds that (1) petitioner waived his right to collaterally attack his sentence under Section 2255, and (2) the ineffective assistance of counsel claims are without merit.

II.     Habeas Standard

---

[2]  Because of petitioner's substantial cooperation, the government recommended a forty percent reduction in his sentence.  Mr. Knight argued to the Court that a greater reduction was warranted based on petitioner's continued cooperation.  The Court ultimately determined that a fifty percent reduction was warranted.

[3] The petitioner's actions, which formed the basis for his conviction, occurred while the defendant was serving a supervised release term for another federal conviction.  Petitioner's supervised release was revoked  prior to petitioner being sentenced in this case.

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982); Lynn v. U.S., 365 F.3d 1225, 1232 (11th Cir. 2004). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185 (1979).

III.   Analysis

   A.   Prosecutorial Misconduct

Carstarphen claims that the United States committed prosecutorial misconduct by indicting him on a conspiracy charge when the acts of the conspiracy were performed pursuant to a cooperation/ immunity agreement. Further, Carstarphen alleges prosecutorial misconduct claiming that the United States "required" him to plead guilty to a quantity of drugs that were covered by the cooperation agreement. In response, the government contends that, pursuant to the plea agreement, Carstarphen waived his right to collaterally attack his sentence and none of the exceptions to the appeal waiver apply to petitioner's claim. The court concurs.

The written plea agreement contained a limited waiver of appeal provision wherein Carstarphen waived his right to challenge any sentence imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under Section 2255. Carstarphen *reserved* the right to appeal or collaterally attack only in the following limited circumstances: (1) any punishment imposed in excess of the statutory maximum; (2) any punishment that constituted an upward departure from the guideline range, and (3) any claim of ineffective assistance of counsel. Carstarphen did not receive a sentence above the statutory

5

maximum, nor did this Court upwardly depart from the sentencing guideline range.  Rather, based on the government's representation of his substantial assistance, the argument of defense counsel and the court's own practice to give reductions based on substantial assistance, Carstarphen's sentence was fifty percent below the low end of the sentencing guideline range.

"A sentence appeal waiver must be made knowingly and voluntarily and is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver."  U.S. v. Oliver, 2008 WL 2404740 *3 (11th Cir., June 16, 2008) (slip opinion) citing United States v. Bushert, 997 F.2d 1343, 1350-1351 (11th Cir.1993), cert.denied, 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994).  Moreover, there is a strong presumption that statements made during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Consequently, a defendant bears a heavy burden to show that his statements under oath were false. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

At sentencing, the undersigned reviewed the terms of the plea agreement, including the waiver provision with petitioner.  When specifically questioned whether he understood that he was waiving certain rights to appeal by entering into the plea with the government, petitioner responded in the affirmative.[4]  Accordingly, based on the waiver contained in his plea

---

[4] The Eleventh Circuit has recognized that plea agreements "are like contracts and should be interpreted in accord with what the parties intended." U.S. v. Rubbo 396 F.3d 1330, 1334 (11th Cir. 2005) citing U.S. v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999) ("A plea agreement is, in essence, a contract between the Government and a criminal defendant."); Allen v. Thomas, 161 F.3d 667, 671 (11th  Cir.1998) ("[W]e have said that the construction of plea agreements is governed generally by the principles of contract law, as we have adapted it for purposes of criminal law ...."). One of the basic tenets of contract law is that there must be a

agreement, Carstarphen is precluded from alleging prosecutorial misconduct. See Bradshaw v. U.S., 2005 WL 1669036 *4 (M. D. Fla., July 12, 2005) (slip opinion) ("Petitioner cannot circumvent the terms of his plea agreement merely because he does not like the outcome at sentencing.")  Therefore, the claims of prosecutorial misconduct are DISMISSED.

      B.     Ineffective Assistance of Counsel

Carstarphen also moves to vacate his sentence and conviction on the grounds that he received ineffective assistance of counsel. Carstarphen alleges that his counsel was ineffective by: (1) failing to file a requested appeal; (2) failing to discover an immunity agreement existing before he pled guilty; (3) advising him that he would receive concurrent sentences, and (4) failing to move for a dismissal of the indictment.

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)). Regarding the analysis of ineffective assistance claims, the Eleventh Circuit has given courts the following guidance:

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no

---

meeting of the minds as to all essential terms in order for a valid contract to be created. See 2 Murray on Contracts § 48 (Lexis 2001).

> relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioners' to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately.  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); see also Chandler v. United States, 218 F. 3d 1305, 1313 (11th Cir. 2000) quoting Strickland, 104 S.Ct. at 2067 ("We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.'"); Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("It is important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls.")  The same standard applies whether the court is examining the performance of counsel at the trial or appellate level. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir.1987).

The Supreme Court has held that the two pronged Strickland  test applies to challenges to guilty pleas based on claims of ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985) Accordingly, in order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, a petitioner must establish the following: (1)  that his counsel's challenged acts or omissions made counsel's overall performance fall below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on proceeding to trial. Id. at 58-60.

In order to satisfy the Strickland standard, counsel must only  provide a client who pleads

8

guilty with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir.1984). The second prong of the Strickland test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, petitioner must show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. Id . Petitioner must establish both prongs of Strickland to be entitled to relief, and the "failure to establish either is fatal and makes it unnecessary to consider the other." Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir.2004).

With this legal framework in mind the Court now turns to petitioner's specific claims of ineffective assistance of counsel.

*1.     Failure to Investigate/Discover Preexisting Immunity Agreement*

Carstarphen claims that his trial counsel was ineffective for failing to discover an immunity agreement that he had entered into prior to his indictment, and that this failure prejudiced him because the drugs seized during his cooperation were used in the calculation of his sentence. Specifically, petitioner contends that immediately after law enforcement officials seized sixteen ounces of cocaine and $27,000 from a residence he occupied, he agreed to cooperate and participate in a controlled purchase of cocaine. Petitioner contends that he participated in a controlled purchase of one kilograms of cocaine from Lawrence Barnes which led to Barnes' arrest. Thereafter, Barnes also cooperated and provided information that led to the seizure of four kilograms of cocaine from Lamar Brown. Petitioner argues that at his

9

sentencing he was held responsible for the four kilograms of cocaine seized from Brown. Petitioner maintains that this is in contradiction to the "signed documentation where he understood that he would have complete immunity from prosecution for any controlled substances seized during his cooperation". (Doc. 132 at 4).

In opposition to the motion the government maintains that Carstarphen has failed to establish that there was a cooperation agreement prior to the one he entered with the United States, and, in fact, there was no such agreement. The government also states that the four kilograms of cocaine identified in the plea agreement did not consist of the amount Carstarphen purchased while cooperating with the Mobile County Sheriff's Office. Further, the government notes that Carstarphen did not object to the drug quantity in the plea agreement at any time.[5]

There is insufficient evidence before the court of a prior immunity agreement entered into by petitioner and the government. See United States v. Hauring, 790 F.2d 1570, 1571 (11th Cir. 1986)(A petitioner bears a heavy burden in asserting that an oral promise by the prosecutor exists outside of the written plea agreement and record.) Specifically, petitioner's current allegation contradicts what he told the court under oath at his guilty plea:

> THE COURT: ... no law enforcement officer or anybody has promised you anything other than what is in this plea agreement?
>
> MR. CARSTARPHEN: No ma'am.

Accordingly, based on Carstarphen's previous statement under oath, the court gives no credibility to petitioner's current contradictory averment. If such an immunity agreement existed Carstarphen should have disclosed it to the court. Accordingly, petitioner has failed to show that

---

[5] The factual resume, which Carstarphen signed, indicates that he "admits the United States could prove his involvement beyond a reasonable doubt with 4 kilograms of cocaine."

10

his attorney was ineffective for failing to "discover" that such an agreement existed or that he was ineffective for advising plaintiff to plead to conduct allegedly covered by an immunity agreement. The petitioner's motion to vacate his sentence on this ground is DENIED.

*2.     Concurrent Sentences*

Next, Carstarphen argues that he received ineffective assistance when counsel told him that he would receive a sentence in this case that would run concurrent to the sentence imposed in a prior case in which his supervised release had been revoked. In an affidavit filed with the court, Chris Knight, petitioner's trial counsel, states, unequivocally, that he did not promise Carstarphen that the sentences would be run concurrently. Rather, Mr. Knight maintains that he informed Carstarphen that the sentences generally run consecutively pursuant to the sentencing guidelines, but that he would argue for the sentences to be served concurrently. The record reflects that Mr. Knight argued at sentencing to have the sentence run concurrently, but the Court denied that request.

As previously outlined, in order to establish ineffective assistance of counsel, a petitioner must show that his attorney's performance was objectively unreasonable and that the deficiency was prejudicial. Cross v. United States, 893 F.2d 1287, 1290 (11th Cir.1990), cert.denied, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). Petitioner claims that he would not have pled guilty if he had known that his sentence would run concurrent with his revocation sentence. If true, this may well show prejudice. However, initially, the court must first determine whether Carstarphen's allegation against Mr. Knight is credible. Thus, a factual dispute exists which relates to whether Mr. Knight's performance was objectively unreasonable, i.e., whether counsel gave incorrect information about the sentence petitioner would receive.

*3.     Failure to Move for Dismissal of the Indictment*

Carstarphen next argues that his counsel was ineffective for failing to move for a dismissal of the indictment. Specifically, Carstarphen asserts that he should have been indicted only for possession but not for conspiracy and that Mr. Knight was ineffective for failing to move to dismiss the conspiracy charge.

The government argues that Carstarphen has not suggested any factual or legal basis upon which counsel could have relied in making such a challenge. The court concurs that the conclusory allegations of ineffective assistance are insufficient. Carstarphen has neither shown counsel's performance to be inadequate nor any resulting prejudice. Accordingly, petitioner's motion to vacate his sentence on this ground is DENIED.

*4.     Failure to File Requested Appeal/Failure to Consult Regarding Appeal*

Carstarphen also claims that he was denied effective assistance because his his counsel failed to file an appeal after petitioner "requested counsel to file an appeal, was told that the appeal would be filed, and understood that an appeal was pending." (Doc. 132 at 5)[6] In support Carstarphen has submitted his affidavit stating, in part: "immediately following my sentencing, [ ] I requested attorney Knight to appeal my case; [ ] attorne[y] [sic] Knight visited me in the holding area following sentence, and advised me that he would take care of the appeal...." (Doc. 134, Affidavit of Johnathan Carstarphen).

In response, the government contends that Carstarphen has failed to prove that he gave

---

[6] Petitioner also states that his counsel failed to consult with him regarding filing an appeal. However, the petitioner fails to proffer any facts in support of this inconsistent alternative claim. Accordingly, petitioner's motion to vacate his sentence on this ground is DENIED.

his counsel an express directive to file an appeal and he has also failed to establish any prejudice occurred or that his attorney was in any way deficient. In support of its position, the government has submitted Mr. Knight's affidavit. Mr. Knight refutes Carstarphen's statements and maintains that he did, in fact, consult with Carstarphen about an appeal on at least two separate occasions but that Carstarphen did not request him to file an appeal on his behalf. Mr. Knight acknowledges that Carstarphen "did initially express a desire to appeal" but after further discussion with petitioner regarding the waiver in the plea agreement Knight came away with "the definite impression... that he [Carstarphen] did not want to appeal because of the appeal waiver." (Doc. 143 , Exhibit 1, Affidavit of Christopher Knight)

In order to prevail on his claim that counsel was constitutionally ineffective for failing to file an appeal, Carstarphen must show that his counsel's performance was deficient and that he suffered prejudice as a result. See Strickland, 466 U.S. at 687; see also Flores-Ortega, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (holding that Strickland test applies to claim that lawyer was ineffective for failing file a notice of appeal).

Generally, counsel has a duty to consult with the defendant about an appeal. See Flores-Ortega, 528 U.S. at 481 (expecting that courts "will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal."). The Supreme Court has defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478. In Cuero v. U.S., 269 Fed. Appx. 893 (11th Cir. 2008)[7] the

---

[7] In Cuero, the Eleventh Circuit affirmed the district court's dismissal of the petition, based on a finding that "Cuero never indicated any interest in an appeal, [and] trial counsel did not have a constitutional duty to consult with Cuero about an appeal." 269 Fed. Appx. at 895.

13

Eleventh Circuit Court of Appeals opined, in part:

> "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480, 120 S.Ct. at 1036. To determine if a rational defendant would want to appeal, we consider it "relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." Otero v. United States, 499 F.3d 1267, 1271 (11th Cir.2007). Whether the defendant reasonably demonstrated to counsel that he was interested in appealing is a factual finding that we review for clear error. Id. at 1269, 1271.
>
> With respect to the second prong of the Strickland test, whether counsel's deficient performance prejudiced the defendant, the Flores-Ortega Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id., 528 U.S. at 484, 120 S.Ct. at 1038. The defendant need not show the putative merits of such an appeal. Id., 528 U.S. at 485-86, 120 S.Ct. at 1039-40; Gomez-Diaz, 433 F.3d at 793.

Id. at 895.

Initially, the court finds that the evidence presented by petitioner and the government indicates that Mr. Knight adequately consulted with Carstarphen regarding the appeal. Thus, the inquiry is whether Carstarphen reasonably demonstrated to counsel that he was interested in appealing and whether he suffered prejudice as result of counsel's failure to file an appeal on his behalf.

---

The Court further concluded that "[e]ven if trial counsel insufficiently consulted with Cuero, it did not amount to ineffective assistance of counsel." Id.

In Gomez-Diaz v. U.S., 433 F.3d 788 (11th Cir.2005) [8] the petitioner alleged that he made an initial request of his attorney to file an appeal and that his attorney then responded that an appeal was not his best option, recommending a § 2255 motion instead. Id. at 792. In finding that the district court erred in declining to hold an evidentiary hearing to establish the content of the communications between petitioner and his attorney, the Eleventh Circuit reasoned, in part, as follows:

> The pleadings are insufficient to indicate whether Petitioner's first expression to his attorney of his desire to appeal triggered the per se duty to appeal outlined in Flores-Ortega. See id. at 477, 120 S.Ct. at 1035. It is also unclear from the pleadings whether, if this statement was not sufficient to trigger the per se duty, the attorney actually consulted with Petitioner regarding the propriety of an appeal, rather than simply expressing his disagreement and making Petitioner's decision for him. However, if the allegations in the pleadings are true, the attorney had the affirmative duty to consult with Petitioner and to try to determine his wishes. Even assuming that a rational defendant would not have wanted to appeal the case, Petitioner alleges that he expressly communicated to his attorney his desire to appeal. In such circumstances, Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes. Id. at 487, 120 S.Ct. at 1040.

Id. See also Patel v. U.S., 252 Fed. Appx. 970, 973 (11th Cir. 2007) cert.denied ___U.S.___, 28 S.Ct. 2890, 171 L.Ed.2d 825 (2008)("[A]n appeal waiver does not relieve counsel of the duty to file a notice of appeal on request.")

The court finds that there is a factual dispute regarding petitioner's claim that Mr. Knight failed to file an appeal after being instructed to do so by petitioner. In Flores-Ortega, the Supreme Court "reaffirmed the well-settled rule that an attorney who fails to file an appeal on

---

[8] The facts of the instant case are similar to those presented in Gomez-Diaz. As in this case, Gomez-Diaz pled guilty pursuant to a written plea agreement containing an appeal waiver and did not file a direct appeal. Rather, as did Carstarphen, Gomez-Diaz filed a § 2255 motion, alleging that his court-appointed counsel was ineffective for failing to file a notice of appeal as he requested.

15

behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." Gomez-Diaz, 433 F.3d at 792 (citing Flores-Ortega, 528 U.S. at 477, 120 S.Ct. 1029). Moreover, petitioner need not show that the appeal had merit in order to show prejudice. Cuero 269 Fed. Appx. at 895 (citations omitted)  As such, an evidentiary hearing on this issue is warranted.  See Futch v. Dugger, 874 F.2d 1483, 1485 (11th Cir. 1989)( "A federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges facts which, if proven, would entitle him to relief.");

In sum, the court finds that an evidentiary hearing is warranted to determine the following:  (1) whether defense counsel improperly advised petitioner that his sentence would be concurrent; and (2) whether petitioner requested defense counsel to appeal.  A hearing is hereby set before the undersigned district judge on **Friday, November 7, 2008 at 3:00 p.m** in Courtroom 5-A, United States District Court for the Southern District of Alabama, 113 St. Joseph Street, Mobile, Alabama 36602.

**THE MARSHALL IS DIRECTED TO PRODUCE THE PETITIONER FOR THIS HEARING.**

**DONE** this the 25th day of September 2008.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**